NOYES *et al.*

*v.*

CARTER *et al.*

(*Supreme Court of Appeals of Virginia, Sept. 26, 1895.*)

[23 S. E. Rep. 1.]

### Fraudulent Conveyances—Evidence.

A husband conveyed a tract of land to his wife, which conveyance was attacked by his creditors. The evidence was conflicting, but the preponderance was against the good faith of the transaction: *held*, that the deed should be set aside.

### Same—Suit to Set Aside—Lien of Attacking Creditor—Case at Bar.

N. sold a tract of land to C., who had the same conveyed to his wife by N., who reserved a vendor's lien for the balance due. C. made an assignment for the benefit of creditors, conveying all his property. The deed from N. to C.'s wife was attacked by plaintiff, as being fraudulent, and set aside: *held*, that plaintiff was entitled to a lien upon the property conveyed by said deed, under Code 1887, § 2460, second only to N.'s vendor's lien.

### Deed of Assignment to Secure Creditors—Reservations—Case at Bar.

The reservation, in a deed to secure creditors, of the right to manage property therein conveyed for three years before sale, the rents and profits in the meantime to belong to the creditors secured, is not such an unreasonable restraint upon the power of sale as to constitute fraud in itself.

Appeal from circuit court, Botetourt county ; H. E. Blair, Judge.

Action by P. H. Noyes & Co. against W. H. Carter and others. Judgment for defendants, and plaintiffs appeal. Reversed.

*H. A. White*, for appellants.

*Benj. Haden*, for appellees.

KEITH, P., delivered the opinion of the court.

William H. Carter, one of the appellees, purchased a tract of land situated in Botetourt county of one George L. Nofsinger in the year 1889 for the sum of $1,800, $500 of which was paid in cash, $400 some time thereafter, and $900, the residue thereof, still remains unpaid. This deferred payment was evidenced by a bond executed by W. H. Carter, with one Arrington as his surety. On the 10th of April, 1893, at the request of W. H. Carter, Nofsinger conveyed this land to M. E. Carter, wife of W. H. Carter, retaining upon the face of the deed a lien for the unpaid purchase money, and at or about the same time a bond was executed, in which M. E. Carter became the principal obligor and Arrington again appears as surety. This bond was to be taken by Nofsinger in the place of that executed by W. H. Carter in 1889, which was to be surrendered. On the 14th of July, 1893, W. H. Carter executed a deed of trust in which he conveyed all of his property, real and personal, to a trustee to secure his debts, in the order named in the deed. In the first class, along with others, he embraces a debt of $2,200 alleged to be due to his wife, M. E. Carter, being the balance for money he received from the sale to the Central Land Company of logs, tan bark, cross-ties and lumber taken from the Nofsinger farm and sold by him. On the first Monday in October, 1893, Noyes & Co. filed their bill, in which they allege that W. H. Carter is indebted to them in the sum of $2,070.10, with interest from March 1, 1893. The plaintiffs in their bill aver that the whole of the consideration for the land purchased from Nofsinger, so far as that consideration has been paid, moved from W. H. Carter, that the purchase was made by him for his own benefit and not for that of his wife, and that he directed Nofsinger and wife to make

the deed to M. E. Carter in order to hinder, delay, and defraud his creditors. The bill avers that the deed from Carter to Shultz, trustee, dated July 14, 1893, is null and void for a number of reasons stated; that it was fraudulent in that it failed to describe any property except in a vague, uncertain, and indefinite manner, as "real, personal, or mixed, wheresoever situated"; that it gave no schedule of the debts of the defendant, except in stating a few of the preferred creditors ; that it required no inventory of the stock, and gave no sufficient information to enable the trustee to take charge of the property ; that it permitted the grantor to remain in control of it for a period of three years, and that the trustee could exercise no authority over it, collect no debt, or take any possession, but "that it reserved to the grantor the use, enjoyment, and dominion over the property intended to be conveyed inconsistent with the avowed purposes and objects, and entirely adequate to the defeat thereof." A good deal of evidence was taken on either side, and, the suit coming on to be heard before the circuit court, a decree was entered declaring the deed from Nofsinger to M. E. Carter fraudulent and void, and also decreeing the deed of July 14th to be fraudulent in so far as it undertook to secure the debt of $2,200 to M. E. Carter, the wife of W. H. Carter ; the court being of opinion, as stated in its decree, that the Nofsinger farm was paid for, so far as it has been paid for, by W. H. Carter. The court then further decreed that, inasmuch as it had been paid for by W. H. Carter, it was his property, and therefore passed under the general terms used in the deed of July 14, 1893, by which, as it has been seen, Carter conveys all of his property, wheresoever situated, to secure the payment of his debts. From this decree Noyes & Co. have appealed to this court, and their special cause of complaint is that the circuit court denied to them a lien upon the Nofsinger land by virtue of section 2460 of the Code, which provides that a creditor instituting a suit to avoid a gift, conveyance, assignment, or transfer of, or charge

upon the estate of his debtor, declared void by sections 2458 and 2459 of the Code, shall, if he obtains a decree, have a lien from the time of bringing his suit upon all estate, both real and personal, thus recovered. The appellees, on the other hand, ask that the decree may be reversed, because, as they claim, there was no fraud in either one of the transactions declared fraudulent by the circuit court.

There is evidence tending to prove that at the time of the negotiation for the purchase of the tract of land from Nofsinger, Carter, who was not then indebted, declared that the purchase was being made to provide a home for his wife and children. There is evidence tending to prove that lumber was cut upon it by those claiming to have acted as the agents of Mrs. Carter, and that in the year 1890 a very large bill of lumber was sawed, amounting to 110,000 feet, which the owner of the sawmill says was done under the direction of William H. Carter, acting as agent for his wife. On the other hand, it appears that, at the time of the contract for the purchase of the land, Carter borrowed $500 from the firm of Breeden & Carter, of which he was a member ; that this sum was accounted for by Carter to Breeden upon the settlement of their partnership accounts. It is true that Breeden now says that the loan was made to Mrs. Carter, and that he looked to her for payment, but the fact is that the money was actually put into possession of W. H. Carter, who paid it over to Nofsinger and afterwards returned it to Breeden in the manner stated above. It further appears that the bond for the last deferred payment of $900 was, as we have before seen, executed by W. H. Carter as the principal obligor, with one Arrington as his surety, and that it remained in this form until April 10, 1803, after the debt set out in the bill had been contracted, and after Carter had, as it appears from the deed of July 14, 1893, become otherwise heavily involved. We have looked at this evidence with every disposition to maintain any interests which appeared to exist in Mrs. Carter, if it could be done with propriety, but it is a well-

established rule, where the validity of settlements made by the husband upon the wife is called in question, that the duty of proving that they rest upon a sufficient consideration is imposed upon those who seek to maintain the settlement as against the rights of creditors. The burden of proof, then, is upon Mrs. Carter, while the weight of evidence is, to our mind, clearly against her. To reach any other conclusion upon the facts in this case would be to overturn well-considered decisions. We are therefore constrained to decide that the circuit court did not err, with respect to the Nofsinger farm, in holding it liable to the creditors of W. H. Carter ; nor do we think that it erred in holding that the deed of July 14, 1893, was not fraudulent upon its face. It is true the enforcement of it by the trustee is postponed for three years, but the property is not, during that period, withdrawn from the pursuit of creditors. On the contrary, by the very terms of the deed, it is provided that Carter, the grantor, shall apply the rents and profits to the payment of the debt in the first class ratably. For the term of three years, therefore, he held that property as trustee for the benefit of certain creditors, and a court of chancery was at all times open for the enforcement of that trust. But apart from this it has been held that the mere postponement of the power of sale for a reasonable time does not in itself constitute a fraud. See Brockenbrough v. Brockenbrough, 31 Grat. 580. The debt of $2,200, however, alleged to be due by W. H. Carter to his wife, and which it was attempted to secure to her under the provisions of this deed, was properly suppressed by the decree complained of. Indeed, this would seem to follow as a consequence from what has been said with reference to the Nofsinger land ; for if the land itself belonged to W. H. Carter, then the proceeds of the lumber, ties, and tan bark taken from it belonged to him also. But, even if this were not so, and assuming that the land in question was hers, yet the husband, managing and controlling it for her, receiving the proceeds, and using them with her consent, without any promise

or undertaking, express or implied, at the time, to repay or to account for them, stands with respect thereto as a donee, and not as a creditor.  See Throckmorton v. Throckmorton (Va.) 22 S. E. 162.  We are therefore of opinion that the circuit court did not err in its decree with respect to the trust deed of July 14, 1893.  We think, however, that the appellant was entitled to a lien under section 2460.  The deed from Nofsinger of April 10, 1893, must be considered as a voluntary conveyance of property from Carter to his wife, it having been made at his instance and request.  As to him, it was a perfectly valid and binding transaction.  All title and interest had passed out of him by his voluntary act, which could only be successfully impeached at the suit of his creditors.  A creditor, availing himself of the privileges accorded him by section 2460, has filed a bill attacking that transaction as voluntary and fraudulent.  The effect of his action is to subject this property to the payment of Carter's debts, which would have otherwise remained vested in Carter's wife, and it seems to us to be just the case provided for in the section named, and that therefore the appellants were entitled, upon bringing their suit and obtaining a decree declaring that conveyance void, to a lien upon the property embraced in the voluntary conveyance thus avoided from the time of the filing of their bill.  A decree will therefore be entered affirming the decree of the circuit court in all other respects, but reversing it in this particular, and establishing the lien for the benefit of appellants upon the Nofsinger farm, subject only to the vendor's lien for the unpaid purchase money.