# CASES

## ARGUED AND DETERMINED

### IN THE

## UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS.

---

FRANK WATERHOUSE & CO., Inc., v. DODGE et al.

(Circuit Court of Appeals, Ninth Circuit. May 4, 1908.)

No. 1,490.

**1. TRUSTS—BREACH OF TRUST—LIABILITY OF TRUSTEE.**

Defendant contracted to sell a vessel to a steamship company, which being indebted to complainant, it was agreed that defendant should transfer the vessel to the steamship company, take a mortgage covering, first, the remainder of the purchase price, and, second, the indebtedness due complainant, evidenced by a note executed by the steamship company to defendant as trustee. The bill of sale of the vessel was never in fact delivered, nor was the mortgage executed. Thereafter defendant, without notifying complainant or giving him any opportunity to protect his interest, which he was able to do, executed mutual releases with the steamship company, and with K., the moneyed man of that concern, formed another corporation, to which the vessel was conveyed; the steamship company going out of business. Defendant received of the stock of the new company an amount equal to the amount remaining due on the vessel; K. receiving an amount equal to cash contributions which he made, necessary to free the vessel from liens for indebtedness incurred by the steamship company. *Held*, that such transaction constituted a breach of trust on defendant's part, rendering it liable to complainant for the amount of its debt against the steamship company.

**2. SAME—PARTIES.**

The steamship company was not an indispensable party to a suit by complainant against defendant for breach of trust.

Appeal from the Circuit Court of the United States for the Northern Division of the Western District of Washington.

For opinion below, see 156 Fed. 57.

W. H. Bogle, Thomas B. Hardin, and Charles P. Spooner, for appellant.

George H. King (Theodore M. Taft and P. Tecumseh, of counsel), for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. The appellee Dodge filed in the court below a bill against the appellant and Frank Waterhouse individually, in effect charging the appellant with a breach of trust by reason of its al-

162 F.—1

leged failure to apply the security with which the trustee was charged
to the payment of a note for $10,000 given by the North Alaska Steam-
ship Company to the appellant as trustee for the complainant, and
praying, among other things, for a judgment for the amount due
thereon. The court below held that there was no ground for recovery
against Frank Waterhouse individually, and accordingly dismissed the
bill as to him, with costs, but gave the complainant judgment for the
money sought against the appellant, which is a corporation of the state
of Washington; the complainant being a citizen of the state of New
York.

The case shows that in January, 1904, Frank Waterhouse & Co., In-
corporated, was the owner of the steamship Garonne, which was then
out of commission in the waters of Puget Sound near Tacoma and in
need of certain repairs. In the early part of the next month the North
Alaska Steamship Company, a corporation of the state of New York,
through one Ferguson, entered into negotiations with Frank Water-
house & Co., Incorporated, for the purchase of the Garonne, which
negotiations resulted in a contract by which Frank Waterhouse & Co.,
Incorporated, agreed to sell the vessel to the North Alaska Steamship
Company for $85,000; $1,000 to be paid in cash, $14,000 to be paid
February 15, 1904, and the balance in deferred payments extending
over a period of two years, which deferred payments were to be se-
cured by a first mortgage on the vessel, an assignment of the marine
insurance thereon, a bond to protect the seller against any indebtedness
that might be contracted by the purchaser on the credit of the vessel,
and other securities satisfactory to the seller. At that time it was con-
templated that the purchaser would accept title to the steamer on Feb-
ruary 15th, when the $14,000 was to be paid, and would at that time
furnish the securities called for by the contract; but on February 5,
1904, Ferguson wrote from New York to Waterhouse at Seattle,
among other things, as follows:

"Your various communications, including confirmation of the sale of the
steamer Garonne, duly received, and we have confirmed a compliance with
the terms by telegraph. We have written our Mr. Hastings to make a
thorough inspection of the steamer and wire us the results of the said inspec-
tion. I expect to be in Seattle myself in time to go over the ship and follow
the lines of inspection; but it is just possible that I may not arrive there in
time, and may be detained here a week or 10 days longer than I anticipate.
In regard to the second payment on the Garonne, we will follow this mode,
which we trust will be satisfactory: On or before February 15th we will de-
posit in the Chase National Bank of New York $14,000, and the bank will
wire the Washington National Bank of Seattle to pay your draft for this
$14,000 on account of the purchase price of the steamer Garonne. We will
also notify you at the same time that we have paid money in to your credit,
and a receipt given by you to our Mr. Hastings will cover the ground. As
soon as I arrive in Seattle we will finish up the matter as to details as per
arrangement, so as to make the transfer of the vessel on the next payment of
$10,000."

On the 10th of February, 1904, Waterhouse telegraphed Ferguson
at New York as follows:

"Received your letter 5th. A vital condition of sale Garonne to you was that
purchase should be entirely completed by February 15th by exchange of steam-
er for fifteen thousand cash, notes, mortgage bond and other satisfactory col-

lateral. Am willing accept fourteen thousand next Monday provided you agree execute notes, mortgage bond and deliver securities by March 1st, or forfeit the fifteen thousand if you fail; but I want you to advise by wire what character of collateral to deferred payments you will furnish in addition to mortgage and bond, so I may pass upon same Monday. I guarantee Garonne good insurable risk, and will pass United States inspection for commission, by expenditure on your part of about seventy-five hundred dollars. Am now doing considerable work on her my own expense, preparatory to inspection. Other parties anxious to purchase her next Monday at same price for practically cash."

The next day, February 11, 1904, Ferguson wired Waterhouse at Seattle as follows:

"Understand Garonne transfer on payment twenty-five thousand my principal understands same and has gone South cannot reach Seattle until March 10th or 12th. We propose pay fourteen thousand February 15th, ten thousand March 15th make then notes for balance mortgage insurance policy good security bonds or cash I may not reach Seattle until March 5th will pay shipkeeper until transfer."

February 15, 1904, C. B. Smith, president of the North Alaska Steamship Company, for whom Ferguson had been acting, paid the appellant, Frank Waterhouse & Co., Incorporated, $14,000, receiving from that company the following:

"Received, Seattle, February 15, 1904, of C. B. Smith, fourteen thousand dollars, being payment due this day on contract for purchase of steamship Garonne. Another payment of $10,000 and the execution of notes, mortgage, bond, and collateral for deferred payments are to be made and completed on or before March 15, 1904, as per terms of contract; and if default is made by said Smith in making said further payment or in execution of said securities on or before March 15th next, then his right to purchase said vessel shall cease, and all moneys paid by him toward such purchase shall be forfeited to and be and remain the moneys of this company.

"Frank Waterhouse & Co., Inc.,
"By Frank Waterhouse, President."

On March 15, 1904, the purchaser remitted to the appellant from New York $7,000, and on March 18th $3,000, making the $10,000 due March 15th, but did not furnish the bond and other securities called for by the contract, or take title to the steamship. The record shows that from that time forward the seller was constantly insisting that the purchaser should complete the contract and take the title, and that the purchaser was continually promising to do so, and that subsequent to March 15th the appellant permitted the purchaser to take possession of the vessel for the purpose of making certain repairs which it desired to make in preparation for the approaching Alaska season, in which trade the steamship was to be engaged. This arrangement, however, was upon the distinct agreement that no indebtedness should be incurred against the vessel, and that all of the repairs, betterments, and supplies should be paid for in cash by the purchaser and the steamship kept free from all incumbrance. Ferguson and one Hastings were the representatives at the time of the North Alaska Steamship Company, and it soon appeared that they were making the repairs and procuring supplies on the credit of the vessel. The appellant thereupon insisted that such indebtedness should be promptly paid by the purchaser, and threatened to cancel the contract and forfeit the payments theretofore

made by the purchasing company unless those debts were paid and the securities called for by the contract furnished. The North Alaska Steamship Company made various payments upon the purchase price of the Garonne and upon the indebtedness so incurred in making the repairs and procuring the supplies, and made various promises of complete performance of the terms of the agreement, and engaged a full cargo of freight and passengers for the voyage of the ship, to commence from Seattle about the 1st day of June. In the latter part of May, 1904, the appellant notified the North Alaska Steamship Company that unless all of the debts incurred against the ship by its representatives, Ferguson and Hastings, were promptly paid and the terms of the contract of purchase complied with, it would not permit the vessel to sail in charge of the North Alaska Steamship Company and would cancel the contract to purchase. About the 1st of June, 1904, the president of the North Alaska Steamship Company, C. B. Smith, came to Seattle, as did Frank S. Pusey, as the representative of the appellee Dodge. Pusey stated, what appears to have been the fact, that the North Alaska Steamship Company was indebted to Dodge in the sum of $10,000, which it had borrowed from him and paid to the appellant, which indebtedness Pusey came to enforce or have secured for Dodge. At that time the balance of the purchase price of the steamer remaining unpaid to Waterhouse & Co. was $37,671.46, or thereabouts, and the amount due from the North Alaska Steamship Company to Dodge was about $10,000. To arrange for the payment of that indebtedness and the security of the interested parties and for the sailing of the ship to Nome with the passengers and freight it had secured, Pusey and the Waterhouse Company then entered into this written agreement:

"Memorandum between Frank S. Pusey, agent for G. M. Dodge, of New York, and Frank Waterhouse & Co., Inc., of Seattle, Washington: The North Alaska Steamship Company is indebted to said Waterhouse & Co., Inc., in the sum of about $37,671.46, being balance due on purchase price of the steamship Garonne, and are also indebted to said G. M. Dodge in the sum of about ten thousand dollars for borrowed money. It is agreed that said Waterhouse & Co., Inc., shall take a mortgage from said North Alaska Steamship Co. upon the steamship Garonne to secure both claims above mentioned. The claim of said Waterhouse & Co., Inc., shall be prior and paramount under such mortgage, and the claim of said Dodge shall be secondary. Said Waterhouse & Co., Inc., shall take a note from said North Alaska Steamship Co., payable to them as trustee, for the amount so owing to said Dodge, said note to be payable in two months from date. It is agreed that said Waterhouse & Co., Inc., in acting as such trustee for said Dodge in the securing of said indebtedness, assumes no liability whatever with reference thereto, except that it agrees to act in good faith.

"Frank S. Pusey,
"Agent for G. M. Dodge.
"Frank Waterhouse & Co., Inc.,
"By Frank Waterhouse, President."

In pursuance of that agreement the contemplated mortgage was prepared and signed by Smith as president of the North Alaska Steamship Company, and Smith also gave to the Waterhouse Company, as trustee for Dodge, an assignment of freight moneys to be earned by the steamer on her contemplated trip to Alaska, although it does not

appear that any money was ever received on that account. A bill of sale of the steamship Garonne, together with the mortgage, was then forwarded by the Waterhouse Company to the Chase National Bank of New York, with instructions to that bank to deliver the bill of sale to the North Alaska Steamship Company upon the completion of the execution of the mortgage, which was never done, and the bill of sale was consequently never delivered. The North Alaska Steamship Company, however, sailed the ship to Nome, leaving Seattle June 2, 1904, during which time the Waterhouse Company acted as agent for the ship, receiving commissions on both receipts and disbursements. After entering into the agreement above set out Pusey returned East, and neither he nor Dodge heard anything further from the Waterhouse Company until about August 25, 1904, when Pusey received a letter from Waterhouse, dated August 2, 1904, which, by reason of misdirection, was returned to Seattle and was remailed August 19, 1904. That letter is as follows:

"Seattle, Aug. 2, 1904.

"F. S. Pusey, Esq., 101 Broadway, New York—Dear Sir: I duly received your telegram of the 15th ult., reading as follows: 'Have you advised of collection of trustee freight money? Just returned yesterday. Please wire present status of our joint claims. [Signed] Frank S. Pusey.' This was not replied to, for the sole reason that I was not in possession of your address, and had no means of knowing where a telegram would reach you, and it was only through your letter of July 27th, which reached me yesterday, that I learned of your address. I must confess to a feeling of surprise and annoyance at the tone of your above-mentioned letter, for the reason that it was specifically understood and put in writing that I was to be in no way personally responsible to you for the collection of your debt against the North Alaska Steamship Company. I agreed to act in the capacity of trustee solely as a matter of accommodation to you, and in that capacity to receive and remit to you the money which the officers of the North Alaska Steamship Company promised to remit to you from Cape Nome and to pay to you out of the revenues of their company thereafter. This was the only duty that I undertook in my capacity as trustee. The money has not been remitted to me from Cape Nome. Therefore I have had no opportunity to receive it or forward it to you. The North Alaska Steamship Company became defunct and has retired from business. In the settlement of my own affairs with the company, I was obliged to take back the steamship Garonne and assume an indebtedness which the North Alaska Steamship Company had loaded her with, amounting to almost $35,000. I took the steamer back and assumed the indebtedness, and subsequently sold her to another corporation. I have no opportunity for protecting your claim. When I was in New York, I was informed that both yourself and Gen. Dodge were out of the city. An effort to get into communication with you was made several times while I was there. I have no idea what disposition was made of the funds that were to be collected by Mr. Smith at Cape Nome, as I have received no advice from either him or from Capt. Ferguson regarding the same. The settlement I was obliged to make with the North Alaska Steamship Company was very unsatisfactory to me. I inclose herewith notes and other papers, which I have been holding in this connection for you. I regret very much that I have been unable to collect this money for you, but the circumstances have been as above. Kindly acknowledge receipt of enclosures.

"Very truly yours, [Signed] Frank Waterhouse."

And this is the way, according to the record, that Waterhouse "settled his own affairs with the company" and left his cestui que trust without protection. It appears that about the middle of June some of the parties interested in the North Alaska Steamship Company, hav-

ing become dissatisfied with the amount of Ferguson's expenditures at Seattle, sent one Mead to that city to look into the affairs. Mead found upon investigation that the expenditures and debts so incurred by Ferguson amounted to $30,000 or thereabouts, and, as a large part of them constituted liens upon the ship, Waterhouse, who still held the title thereto, was very naturally insistent upon their being paid. Accordingly he, with his attorney, went with Mead on his return to New York, and there in the early part of July had a number of meetings with the persons interested in the North Alaska Steamship Company and their attorneys, of none of which meetings was Dodge in any way notified. The only evidence we find in the record upon that subject is the following from the testimony of Waterhouse:

"Q. Was Gen. Dodge present at any of those meetings? A. No, sir. Q. What efforts, if any, were made to communicate with Gen. Dodge or securing his presence? A. Mr. Corwine—

"Mr. King: We want the witness' testimony limited to his own knowledge.

"A. (continuing). Mr. Corwine endeavored to get in communication with him, and reported at one of the meetings that Gen. Dodge was out of town and he had been unable to learn of his address."

At those meetings Waterhouse was insistent upon the payment of the indebtedness incurred by Ferguson and upon the balance due himself, amounting in all to about $67,000; but it does not appear that he made any allusion to the $10,000 due Dodge. While the North Alaska Steamship Company undoubtedly treated the Waterhouse Company badly in failing to perform its agreement, that fact afforded no just ground for the disposition the appellant then and there made of the trust property, which the record shows to have been this: The North Alaska Steamship Company failing to make the payments insisted upon by the Waterhouse Company, those two companies agreed to exchange general releases, which they thereupon did, and Waterhouse and F. W. King, who seems to have been the moneyed man of the North Alaska Steamship Company, at the same time entered into an agreement to organize a corporation styled the Merchants' & Miners' Steamship Company, with a capital stock of $67,000, to which the Waterhouse Company should convey the steamship Garonne, in consideration of which conveyance the Merchants' & Miners' Steamship Company should issue to the Waterhouse Company its stock to the amount of $37,000, which amount was practically the unpaid balance of the purchase price the North Alaska Steamship Company had originally agreed to pay for the Garonne, and the remaining $30,000 of stock of the Merchants' & Miners' Steamship Company was to be issued to King in consideration of that much cash that he agreed to advance with which to pay and discharge the indebtedness incurred by Ferguson at Seattle. That arrangement, the record shows, was carried into effect. The upshot of it all was that the Waterhouse Company got all but $37,000 of the $85,000 the North Alaska Steamship Company had agreed to pay it for the steamship Garonne, and for the remaining $37,000 of the purchase money he got $37,000 of the $67,000 of the stock of the Merchants' & Miners' Steamship Company, with that company holding the Garonne freed of all the liens that Ferguson had created against it, by the $30,000 advanced by King for the $30,000

of stock of the Merchants' & Miners' Steamship Company that he received.

We are of the opinion that the court below was right in holding that such disposition of the trust property by the appellant, in utter disregard of the interest of the cestui que trust and without notice to him, entitled the appellee Dodge in equity and good conscience to judgment against the appellant for the amount due upon the $10,000 note mentioned in the trust agreement. The evidence is uncontradicted that Gen. Dodge was financially able to have protected his interest, and would have done so, had he been advised of the transactions in question. It is idle to contend that Waterhouse could not have notified him of the proceedings because he did not know where to find him. The record shows that the appellee Dodge then, and for about 18 years had, maintained offices at No. 1 Broadway, New York, where he was almost daily during the negotiations in question, and with which he was in constant telephone communication; that his business and house address appeared in a standard directory of the city; that he was a man of prominence in New York, and, indeed, throughout the country; was personally known to many of the persons attending the meetings in question; and that Waterhouse was personally told of the appellee's New York address by Pusey while in Seattle in the early part of 1904, when the latter was asked by Waterhouse whether Gen. Dodge would not join him in purchasing two steamships in the East and putting them into the traffic between Seattle and Alaska.

We also agree with the court below that the real controversy in this case is between the appellant and the appellee Dodge, and that the North Alaska Steamship Company is not an indispensable party.

The judgment is affirmed.