## Natural Gas Products Company v. I. H. Thurman, Judge

(Decided October 17, 1924.)

### Motion for Writ of Prohibition.

1. Courts—Court of Appeals has Jurisdiction to Grant Writ Prohibiting Trial of Indictments when Punishment would Not Permit Appeal.—Under Constitution, section 110, Court of Appeals has jurisdiction to grant writ to prohibit trial of number of indictments charging violation of Ky. Stats., section 1321, punishable by fine not sufficient to authorize appeal, where conviction has been had under one indictment, and lower court will probably convict under other indictments, and thus produce great and irreparable injury.

2. Sunday—Operation of Plant for Manufacture of "Carbon Black" a Work of "Necessity."—Operation of plant for manufacture of "carbon black" on Sunday held work of "necessity" within Ky. Stats., section 1321, when any cessation of operation would injuriously and materially affect quality of the product.

3. Sunday—"Necessity" Does Not Mean a Physical and Absolute Necessity.—Word "necessity" in Ky. Stats., section 1321, relating to works of necessity on Sunday, does not mean "a physical and absolute necessity," and question must be determined according to particular circumstances of each case, having regard also to changing conditions of civilization.

W. T. FOWLER and O'REAR, FOWLER & WALLACE for appellant.

FRANK E. DAUGHERTY, Attorney General, and GARDNER K. BYERS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Sustaining the motion and granting the writ of prohibition.

The plaintiff, Natural Gas Products Company, is a foreign corporation and has constructed an extensive plant in Green county, Kentucky, with machinery necessary for manufacturing out of natural gas a commercial product known as "carbon black," which product, as shown by the record, is extensively used in the manufac-

ture of a number of other useful commercial articles; and it further appears that in the manufacture of such other products there is no effectual substitute for "carbon black." The grand jury of Green county returned 24 indictments against plaintiff charging it with violating section 1321 of the statutes by operating its machinery and prosecuting its business on Sunday, the Sabbath day. The punishment for a violation of the section is a fine of not less than two nor more than fifty dollars, which is not sufficient to authorize an appeal to this court, even though the maximum fine be assessed. There was a trial under one of the indictments and defendant pleaded not guilty (though admitted the operation of its plant on Sunday), on the ground that the work in which it was engaged, and for the doing of which on Sunday it was indicted, was a "work of necessity," and rendered it not amenable to the statute. The court ruled that, in as much as the defendant admitted prosecuting its business on Sunday, the burden was on it to excuse itself on the ground of necessity, to which ruling it excepted and then introduced its testimony, at the close of which the court adjudged it guilty and assessed the maximum fine of fifty dollars; whereupon it filed this original petition in this court against defendant, I. H. Thurman, the duly and regularly elected and acting judge of the Green circuit court, praying that he be prohibited from trying and convicting it on the other twenty-three indictments, which it alleged he had announced that he intended to do and to inflict the maximum fine in each case. The petition further alleged the extensive cost of the plant installed by defendant and that in the manufacture of "carbon black," on account of the delicacy of the product and at least some of the required machinery, it was imperatively necessary that the plant should be kept in continuous operation; that briefly stated the product of "carbon black" corresponded somewhat to the smoke of a lamp upon glass and which was produced by the burning of the natural gas with the smoke accumulating on a delicate steel plate on which it would accumulate and later scraped therefrom into a revolving screw or some receptacle in which it would be conveyed to a place for preparing it for the market, and that to remove the fire or stop the burning of the gas would cause the accumulated black on the steel plate to harden and crack and become brittle and gritty, which would result in the total loss of all of that substance accumulated on the steel plate at the time

of shutting down of operations; and, in addition, the damaged product becomes mixed with the perfect product and frequently destroys the entire mixture. It was also alleged that it was absolutely necessary that there be a continuous operation of the plant, because unless it was so done plaintiff's business, which is acknowledgedly a lawful one, would be destroyed, followed by the loss of its investment and the profits arising from the operation of its plant. Other facts showing the operation to be one of necessity were alleged, but the one above stated was the chief and most convincing one.

Plaintiff introduced a number of witnesses who qualified as experts in the manufacture of "carbon black" with natural gas, some of whom had worked at the business for as long as forty years, and they each sustained the allegations of the petition and clearly pointed out the destructive consequences of a shut down from Saturday night at 12 o'clock till the same hour Sunday night, and for even a shorter time. That evidence as transcribed by the stenographer by agreement was filed with the petition and to be considered by this court on the hearing. In addition to it plaintiff has filed the testimony of six additional expert witnesses. Illustrating the substance of the testimony of all the witnesses, we will briefly refer to that of P. F. Reardon, who, after stating that he had been engaged in the manufacturing of "carbon black" for as much as twenty-five years for various concerns located in different parts of the country, said that "the closing of a carbon black manufacturing plant for the period of 24 hours or even for a considerably less period, would materially affect the quality and color of the product produced for several days after such shut down; that the black produced for the period of from 2 to three days after such shut down would be weakened and lightened in color which would materially affect its quality for certain commercial uses; that the effect also of a shut down for the period above mentioned, would cause the black manufactured for the next 2 or 3 days thereafter to be scaley and gritty and that scaley and gritty black is totally unfit for most of the commercial uses to which it is put; that after the shut down for any such period, it would take 2 or 3 days to get the product of the plant back to the quality manufactured before such shut down, both as to color, and as to the elimination of scales and grit." The same witness

further stated "that an even temperature is necessary in order to produce a grade and quality of carbon black fit for commercial use; that the closing of a plant for the period of 24 hours, or in fact for any period, would require that the gas be turned off, which would permit the plant to cool and materially change the temperature; that carbon black manufacturing plants are necessarily constructed completely of metal; that in the process of manufacturing carbon black, gas is burned against smooth metal plates upon which the carbon black collects and from which it is scraped automatically and continuously; that when the gas is turned off the plates become cool and the coating of black thereon becomes softened and loosened, and that when the gas is again turned on the coating of black which was left on the plates comes off in scales and grit, spoiling the product until such time as the coating of black on the plates again acquires the proper consistency and that it takes from 2 to 3 days after the plates have been allowed to cool from the time the heat is again turned on until the same grade and quality of black produced before the shut down, can be made; that this condition results from the contraction and expansion of the plates, loosening the coating of black thereon, which, under continued heat, acquires and retains the proper consistency necessary to produce a commercial grade and quality of carbon black." The other witnesses who testified upon the trial in the circuit court, as well as those testifying in this court, with one accord corroborate those statements, and that testimony is uncontradicted, since none has been introduced by the defendant nor did he deny the allegations of the petition, but submitted the cause on his demurrer filed thereto and upon the evidence filed therewith.

The first question is one of jurisdiction of this court under the circumstances to issue the writ, which if possessed is given by section 110 of the Constitution, saying: "Said court (of appeals) shall have power to issue such writs as may be necessary to give it a general control of inferior jurisdictions." Among the first cases coming before this court after the adoption of our present Constitution, including of course section 110, which dealt with the power of this court as conferred thereby was the case of Standard Oil Co. v. Linn, 17 Ky. L. R. 832: In that case the Standard Oil Company was indicted 65 times by the grand jury of Calloway county for a statutory offense, the penalty for the violation of which was not suf-

ficient to give this court jurisdiction on appeal, and it filed an original petition in this court against the judge of the Calloway circuit court to enjoin or prohibit him from trying those indictments. It was not alleged in the petition that the defendant therein had expressed any opinion adverse to the petitioner nor had he tried it under any of the indictments and of course had rendered no judgment of conviction therein. This court, in an opinion by Judge Pryor, denied the writ and seems to have based the court's conclusion on the definition of a writ of prohibition given in section 479 of the Civil Code of Practice "as an order of the circuit court to an inferior court of limited jurisdiction, prohibiting it from proceeding in a matter out of its jurisdiction," which we think was a misconception of the limits of the authority conferred on this court by section 110 of the Constitution, since that section does not even mention the writ of prohibition or any other process by name but confers general power on this court "to issue such writs as may be necessary to give it a general control of inferior jurisdictions." However, the Lynn opinion was correct under the facts there presented; the court had jurisdiction to try the indictments and this court could not anticipate that great and irreparable, or any, injury would result to defendant therein as a result of an erroneous conviction, and from which it had no adequate remedy by appeal or otherwise. In other words, in that case there was no showing that any great or irreparable injury would result to the petitioner if the writ did not issue. Since the rendition of that opinion, we have had before us a number of applications of this kind invoking our authority under the section of the Constitution referred to, and have invariably held, as against circuit judges as well as judges of courts inferior thereto, that an appropriate writ will issue, not only in cases where the court is about to proceed or is proceeding beyond its jurisdiction, but it will also issue when the court is proceeding or threatening to proceed within its jurisdiction but in such a manner as to produce great and irreparable injury "and against the results of which he (the petitioner) has no adequate remedy, other than the writ of prohibition." Ohio River Contract Co. v. Gordon, 170 Ky. 412, and a long list of cases from this court cited on pages 419 and 420. In the case of Prison Commissioners v. Crumbaugh, 161 Ky. 540, it is also said that "it is well

settled that a writ of prohibition may issue in a case like this whenever the inferior court is proceeding out of its jurisdiction, or where it has jurisdiction, but an appeal will not furnish an adequate remedy or there is no other remedy," which, of course, must be read in connection with statements in many of our opinions that, "great and irreparable injury will result to the petitioner unless the writ is granted." The Gordon opinion was referred to and copiously quoted from in the later one of Western Oil Refining Co. v. Wells, 180 Ky. 32, and in that opinion it is further said:

"This court in many recent cases has had before it for consideration the question of its supervisory power as conferred by section 110 of the Constitution, and in every case where presented it has been held that the jurisdiction conferred by that section would not be exercised through the medium of the writ of prohibition unless (1) the court sought to be prohibited was proceeding or about to proceed in a matter over which it had no jurisdiction; or (2) if it did have jurisdiction that the action about to be taken would result in great injustice to the plaintiff in the prohibition proceeding, and great or irreparable injury to him, and that he had no other remedy by appeal, or otherwise. Board of Prison Commissioners v. Crumbaugh, 161 Ky. 540; Ohio River Contract Co. v. Gordon, 170 Ky. 412; Greene, Auditor v. Wolfe, 175 Ky. 58; Cohen v. Webb, idem 1; Rallihan v. Gordon, 176 Ky. 471, and Board of Commissioners v. Crumbaugh, idem 720."

A case in which the facts were analogous to those involved here is that of Illinois Central R. R. Co. v. Rice, 154 Ky. 198, wherein the court in its opinion said: "It seems to us an extraordinary situation is here presented requiring the interposition of this court," and a temporary writ of prohibition was granted restraining the county judge of Muhlenburg county from proceeding to try cases within his jurisdiction and from which there was no appeal until a hearing upon its merits could be had in an injunction proceeding then pending in the circuit court. We are, therefore, constrained to the conclusion that under the averments of the petition we have jurisdiction to grant the writ if the facts authorize it.

Obviously defendant is not guilty of violating the statute, if the work, for the doing of which on Sunday it

was indicted, was a *necessity* within the contemplation of the statute, and to indict and convict it for each Sunday that it operates its plant, as it is alleged in the petition it is the intention and purpose of defendant to do, then great and irreparable injury will result to it and for the prevention of which there is no other adequate remedy, which brings us to a consideration of whether the work was one of necessity so as to relieve plaintiff from the imposed penalties, since this and other courts have held that the statute was a valid exercise by the legislature of its police power.

In construing and applying the word "necessity" in such statutes, it is not meant "a physical and absolute necessity" and, "the question must be determined according to the particular circumstances of each case, having regard also to the changing conditions of civilzation." (25 R. C. L. 1421.) On the following page a number of instances are given of such a necessity as will excuse one from the operation of the statute, included in which the operation of an ice factory, and the hauling to market of fruit and produce to avoid its spoiling. A familiar illustration in this state would be the firing of tobacco so as to properly cure and color it for market, as well as to prevent it from damaging in the barn, since we are convinced that although such labor is a part of the regular work of a farmer, and other similar work rendered absolutely necessary for the protection and preservation of his produce, yet it would no doubt be regarded as a *work of necessity* within the contemplation of the statute. But, the question has been before us in a number of cases, one of which is McAfee v. Commonwealth, 173 Ky. 83; and in defining the requisite necessity of the work in order to relieve the one doing it from the penalties of the statute, the opinion in that case said:

"It is also well settled by the current authority that the necessity that will excuse engaging in work or business on the Sabbath day need not be a physical necessity or an imperative or overpowering necessity. It need be only a reasonable necessity and one that is created by some real or unexpected emergency or uncommon or extraordinary condition. The fact that the failure to do something may cause interruption or delay in the ordinary course of business, or some discomfort or inconvenience to the individual affected or the public, will not make the do-

ing of the thing a work of necessity. It must be something that not to do would work severe hardship or loss or unusual discomfort or inconvenience either to the individual who does the thing complained of or to the person or persons for whom he does it. Commonwealth v. White, 190 Mass. 578, 5 L. R. A. (N. S.) 320; Quarles v. State, 55 Ark. 10, 14 L. R. A. 192; Western Union Telegraph Co. v. Yopst, 118 Ind. 248, 3 L. R. A. 324; State v. James, 81 S. C. 197, 16 Ann. Cases 277; City of Gulfport v. Stratakos, 90 Miss. 489, 13 Ann. Cases 855; Burns v. Moore, 76 Ala. 339, 52 Am. Rep. 332; Pate v. Wright, 30 Ind. 476, 95 Am. Dec. 705.

"It is also true that conditions and emergencies are continually arising that make it necessary to engage in work or business on Sunday either for the benefit of the person actually engaged in the work or business or for the benefit of some other person affected by the condition or emergency."

And that excerpt seems to be a fair expression of the law everywhere upon the subject. Other cases since then are Capital Theater Co. v. Commonwealth, 178 Ky. 780, and Page v. O'Sullivan, 159 Ky. 703, and others referred to in those opinions.

Measuring the necessity relied on by plaintiff in this case by that definition, we can arrive at no other conclusion than that the work for which plaintiff was indicted and convicted and for which defendant, according to the allegations of the petition, intends to continue to prosecute and convict it, was and is such a work of necessity as relieves it from the penalties of the statute. Clearly the work which plaintiff did and proposes to do on Sunday and for which it was indicted was, according to the averments of the petition and the undisputed testimony, "something that not to do (it) would work severe hardship or loss . . . to the individual who does the thing complained of or to the person or persons for whom he does it," even to the practical destruction of the business.

It, therefore, follows that the motion should be and it is sustained and a writ ordering and directing defendant to not proceed with the trial of the other indictments or to cause others to be returned will issue.