52 N.J. Super. 533 (1958)
146 A.2d 134
TOWN OF WEST ORANGE, COMPLAINANT,
v.
JORDAN CORPORATION, DEFENDANT.
Superior Court of New Jersey, Essex County Court.
Decided November 17, 1958.
*536 Mr. William E. Kennedy, attorney for complainant.
Messrs. Stein & Feinseth (Mr. Julius Stein, appearing; Mr. Kenneth R. Stein, on the brief), attorneys for defendant.
SCHERER, J.S.C. (temporarily assigned).
The defendant appeals from a judgment of the Municipal Court of the Town of West Orange, finding it guilty of violating Ordinance No. 1842 of that town, passed April 1, 1958, entitled, "An Ordinance Prohibiting Certain Worldly Employment and Business on Sunday in the Town of West Orange, Essex County, New Jersey, and Providing Certain Penalties for the Violation Thereof." There was a stenographic transcript *537 of the proceeding in the municipal court and the appeal is on the record below. R.R. 3:10-10(a).
The facts in this case are not in dispute. The complaining police officer testified that on Sunday, June 15, 1958, while he was at a house at 2 Powell Drive, West Orange, which is the property referred to in the complaint, he met a Mr. Shallit, who stated that he was the builder of the homes in a tract called Oldstead Development. Defendant conceded that it was the owner of the property 2 Powell Drive. The police officer testified that at 2:30 in the afternoon of that day he made an inspection of the tract and the house 2 Powell Drive in the company of two other detectives. They drove to the house in question, which is classified as a model home. There was a sign outside the house indicating that it was a model home, and signs inside the house stated that for information concerning price, terms, etc., persons interested could call Henry M. Lesher, sales agent, whose phone number was given. They observed at the Powell Drive property that several people were going into and coming out of the house and driving away in cars. The witness counted approximately a half dozen while he was there. Counsel for the defendant, at the trial in the municipal court, admitted for the record that the home was open for inspection on that day and that there were two representatives of the defendant present who were there to answer questions but not to transact any business. The witness said that he saw no money pass, no contracts signed, no deposits accepted, nor did he hear any conversation regarding sales price or terms of sale. He did, however, hear Mr. Lesher ask whether there were any questions. People walked through the house inspecting it.
The defendant moved for a dismissal at the close of the town's case and, this motion being denied, rested its case without the introduction of any evidence and moved for a judgment of acquittal. Prior to resting his case, counsel for the defendant advised the court that he had planned to subpoena four of the five commissioners, who would testify, if present, that it was not their intention by the adoption *538 of the ordinance to prohibit acts such as those with which the defendant was charged. The court ruled that such testimony would not be material. Counsel for the defendant then moved for acquittal, which motion was denied. The defendant was found guilty and a fine imposed.

I.

IS THE ORDINANCE VALID?
Section 1 of the ordinance in this case is a verbatim copy of N.J.S. 2A:171-1, with the substitution of the words "The Town of West Orange" for the words "this state." Section 1 of the ordinance is the one referred to in the complaint. It is argued that the ordinance is invalid because it is, in the first and other sections, a copy of the cited statute and the latter has been repealed by chapter 138 of the Laws of 1958 (N.J.S. 2A:171-5.1).
We start with the proposition that there is a presumption in favor of the validity of the ordinance and that the burden of showing to the contrary rests upon those who attack it. Edwards v. Mayor, etc., of Borough of Moonachie, 3 N.J. 17, 26 (1949); City of Elizabeth v. Windsor-Fifth Avenue, 31 N.J. Super. 187 (App. Div. 1954); Bellington v. Tp. of East Windsor, 32 N.J. Super. 243 (App. Div. 1954); Auto-Rite Supply Co. v. Mayor, etc., Woodbridge Tp., 41 N.J. Super. 303 (Law Div. 1956).
The New Jersey Constitution, Article IV, Sec. VII, par. 11, requires that municipal laws shall be liberally construed. The appellant argues, however, that L. 1958, c. 138, constitutes a change in the public policy of this State in dealing with Sunday observance and that the effect of that law is to proscribe only the sale of those kinds of personal property which are specifically mentioned in that statute. Appellant also argues that, since the 1958 act is in conflict with and repugnant to N.J.S. 2A:171-1 et seq., it operates as an implied repealer of the last cited statute, and, since the ordinance is based upon the earlier statute, the ordinance, too, must fall.
*539 A comparison of the two statutes leads to the conclusion that this argument is without merit. Chapter 138 of the Laws of 1958 states specifically in its title that it is a supplement to chapter 171 of Title 2A of the New Jersey Statutes. It inserts in the latter statute an entirely new section, which bears the number 5.1. The prior statute had no section thus numbered. Further, the new act does not in any way limit or circumscribe the provisions of chapter 171 of Title 2A, but merely provides penalties if sales are made on Sunday of those items of merchandise specifically enumerated in the 1958 act. N.J.S. 2A:171-1 et seq., contains no penalty provisions and perhaps the Legislature, in dealing with the items enumerated in L. 1958, c. 138, believed that these items required special treatment and therefore imposed specific penalties for the sale of such items on Sunday. It has done this with respect to other items of merchandise; for example, the sale of new and used automobiles. See N.J.S. 2A:171-1.1; Gundaker Central Motors v. Gassert, 23 N.J. 71 (1956), appeal denied 354 U.S. 933, 77 S.Ct. 1397, 1 L.Ed.2d 1533. The most that can be said is that the Legislature decided specifically to interdict the sale of certain items of merchandise but not to change public policy with respect to the sale of other merchandise. The enumerating of specific items in the statute should not be construed as exempting from the provisions of the Sunday closing statute all other business, in the absence of some clear legislative expression to that effect. There is no such intent apparent in the statute.
No express repealer of any of the provisions of chapter 171 of Title 2A is found in L. 1958, c. 138. Implied repealers are not favored in the law. 50 Am. Jur., Statutes, sec. 538, p. 542; Mahr v. State, 12 N.J. Super. 253 (Ch. Div. 1951).
In French v. Ocean City, 136 N.J.L. 57 (Sup. Ct. 1947), Justice Heher said, at p. 59:
"Repeals by implication are not favored in the law. The question is one of intention; and, in the absence of an express repealer, *540 the indication of an intention to effect a repeal of prior legislation must be clear and compelling. There is a presumption against such an intention. * * *"
In order, therefore, to find that the 1958 statute repeals the old one by implication, there must be a finding that the provisions in the former are repugnant to or inconsistent with the provisions in the latter, or that the legislative intent to repeal the earlier statute is clearly apparent in the later one. A reading of the two statutes does not reveal any repugnancy or inconsistency, nor is there indicated in the later one any legislative intent to repeal the earlier statute. On the contrary, it is clearly stated in the 1958 statute that it is intended as an additional remedy. L. 1958, c. 138, sec. 4.
Where there are two acts on the same subject, the rule is that both must be given effect, if possible. Bruck v. Credit Corp., 3 N.J. 401 (1950); Montclair v. Stanoyevich, 6 N.J. 479 (1951). It is possible in this case to give effect to both statutes.
West Orange in adopting this ordinance followed the course which the revisors of Title 2A envisaged. Judge Clapp in the foreword to Title 2A said:
"* * * It was intended to leave municipalities with the power, they theretofore had, to control and regulate Sunday activity."
By this ordinance, West Orange is attempting to control and regulate Sunday activity.
The power of a municipality to pass an ordinance for the prevention of business activity on Sunday is not found in N.J.S. 2A:171-1, but in the Home Rule Act, R.S. 40:48-2. City of Elizabeth v. Windsor-Fifth Avenue, supra.
In Auto-Rite Supply Co. v. Woodbridge Twp., 25 N.J. 188 (1957), Justice Burling stated, at page 193:
"N.J.S. 2A:171-1 is not the source of the power. This is to be found in the omnibus provision of the Home Rule Act, R.S. *541 40:48-2, enabling municipalities to enact ordinances for the preservation of the public health, safety and welfare of its citizens. The Sunday law, however, does cast the die into which local control and regulation must necessarily take shape if the essential purpose of the enactment is to be achieved."
R.S. 40:48-2 provides that any municipality may make such ordinances as it may deem necessary and proper "for the preservation of the public health, safety and welfare of the municipality and its inhabitants, and as may be necessary to carry into effect the powers and duties conferred and imposed by this subtitle, or by any law."
The fact that contiguous municipalities do not have similar ordinances does not affect the validity of the one adopted by West Orange. Hertz Washmobile System v. South Orange, 41 N.J. Super. 110 (Law Div. 1956).
So long as the ordinance in question conforms to and is not inconsistent with the state statute, it is valid. Auto-Rite Supply Co. v. Woodbridge Twp., supra; Hertz Washmobile System v. South Orange, 25 N.J. 207, 212 (1957).

II.

WAS THE CONDUCT OF THE DEFENDANT PROSCRIBED BY THE ORDINANCE?
The defendant argues that the displaying and exhibiting of homes is a work of necessity and therefore not prohibited by N.J.S. 2A:171-1 et seq., or by the West Orange ordinance enacted pursuant to that statute. It also contends that the employees of the defendant were not engaged in worldly employment or business and that what they were doing was not intended to be prevented by the ordinance.
The ordinance excepts "works of necessity and charity" from its operation, and in its title provides that its purpose is to prohibit certain worldly employment or business on Sunday. Since the defendant obviously was not engaged in charitable work, we are concerned only with whether the defendant, through its officers and employees, was engaged *542 in a work of necessity and whether what was being done constituted worldly employment or business on Sunday.
Some examples of the wide diversity of opinion as to what constitutes a work of necessity are found in Chadwick v. Stokes, 162 F.2d 132, 172 A.L.R. 405 (3 Cir. 1947); People v. Dunford, 207 N.Y. 17, 100 N.E. 433 (Ct. App. 1912); Francisco v. Commonwealth, 180 Va. 371, 23 S.E.2d 234 (Sup. Ct. App. 1942); Natural Gas Products Co. v. Thurman, 205 Ky. 100, 265 S.W. 475 (Ct. App. 1924); Rich v. Commonwealth, 198 Va. 445, 94 S.E.2d 549 (Sup. Ct. App. 1956); McAfee v. Commonwealth, 173 Ky. 83, 190 S.W. 671, L.R.A. 1917C, 377 (Ct. App. 1917); 50 Am. Jur., Sundays and Holidays, sections 16-18, pp. 814-818.
But, whether we accept the definition of "necessity" as:
"Something indispensable; a necessary; a requisite; as, sufficient for the necessities of life. * * * A state or condition imperatively demanding relief or assistance; urgent need; * * *." Webster's New International Dictionary, Second Edition, Unabridged,
or that suggested by the Supreme Court of Appeals of Virginia in Francisco v. Commonwealth, supra [180 Va. 371, 23 S.E.2d 238]:
"While we realize that the words are difficult to define, we think the following is a more practical definition: The work of necessity covered by the exception in the statute is not merely one of absolute or physical necessity, not merely something required to furnish physical existence or safety of person or property, but embraces as well all work reasonably essential to the economic, social or moral welfare of the people, viewed in the light of the habits and customs of the age in which they live and of the community in which they reside. While the word necessity is elastic and relative, and should be construed with reference to the conditions under which we live, the elasticity should not be extended so far as to cover that which is merely desirable and not reasonably essential,"
the authorities are in accord that the question, of what constitutes a work of necessity, ultimately becomes a question of fact for the jury or the trier of the facts, rather than a *543 question of law for the court. 50 Am. Jur., Sundays and Holidays, sec. 34, p. 829; Francisco v. Commonwealth, supra.
In view of the conclusions reached in this case, it is not necessary to discuss the many cases disclosing the wide disparity of views as to what constitutes a work of necessity. But the defendant's argument  that inspection of homes and model homes on Sunday has become a necessity to those people who are seeking to purchase a home because that practice has been engaged in for many years and has been accepted as a week-end activity, and that therefore the display of homes on Sunday "is of the utmost necessity"  is not persuasive.
Most persons in this area enjoy a five-day work week. It is difficult to believe that any person interested in the purchase of a home could not make arrangements to inspect it on some day other than Sunday or at night. While it is undoubtedly true that model homes have been open on Sunday for inspection for many years, this does not compel the conclusion that it is a necessary part of the sale of real estate that such homes must continue to be open for inspection on Sunday. For many years prior to the statute with respect to the sale of new and used automobiles, the persons in that field believed that it was necessary for them to operate on Sunday. That was one of the arguments advanced in the Gundaker case, supra, for the proposition that a statute which sought to prevent this was unconstitutional. This argument was struck down by the Supreme Court, where it was aptly stated that the cars which would have been sold on Sunday would be sold on other days of the week to the same prospective purchasers. The same reasoning applies to the sale of houses.
The purpose of the Sunday closing statute, and ordinances like the present one passed under the authority of that statute, is clearly set forth in the opinion of Chief Justice (then Judge) Weintraub, in Hertz Washmobile System v. South Orange, supra, where he said as follows:
"The thesis usually advanced today is that the object is to protect all persons from the physical and moral debasement which comes *544 from uninterrupted labor. * * * That this objective may be sought under the police power of the State is beyond question, and so also it may not be disputed that the State may choose the Christian Sabbath for the day of rest, as our Legislature has done."
The holding in that case was affirmed 25 N.J. 207 (1957).
See also, Auto-Rite Supply Co. v. Woodbridge Twp., supra, where Justice Burling said, 25 N.J. at page 192:
"The legislative policy of this State to set aside the first day of the week as one of rest and relaxation is a declaration of long standing. See State v. Maier, 13 N.J. 235, 261 (1953). Our legislative pronouncements have been in keeping with the object to be achieved by prohibiting all `worldly employment or business' and are an extension upon the design of the English statute of 29 Car. II, c. 7 (1676), which merely prohibited one from engaging in the labor of his `ordinary calling.' Reeves v. Butcher, 31 N.J.L. 224, 225 (Sup. Ct. 1865). The legislative purpose today is comparable to that of 146 years ago when Justice Pennington commented: `It is to prevent the public exposure of goods, merchandise, etc., for sale on Sunday, and selling them in consequence thereof,' Crocket v. Vanderveer, 3 N.J.L. 856, 857 [Reprint 422, 424] (Sup. Ct. 1811), and thereby provide an escape from the market place for merchant and customer alike. Sunday is to be a day of rest, and this has been `the general and immemorial policy of the state.' Sherman v. City of Paterson, 82 N.J.L. 345, 346 (Sup. Ct. 1912)."
If, as stated in the Auto-Rite case, supra, the objective sought is to provide a day of rest and escape from the market place for merchant and customer alike, then the defendant and its officers and employees clearly violated the ordinance. Whether they were at the model home merely to keep it open for inspection and to answer questions, rather than to make any sales, is beside the point. In so doing, they were in the market place and the persons inspecting the house were customers, so that neither the merchant nor the customers had the day of rest intended by the ordinance. While the proofs are undisputed that there were no sales, no payment of deposits and no questions about the terms of sale, it can fairly be inferred that the real estate agent of the defendant and one of its officers, who admittedly were at the property for answering questions, were there to answer questions in connection with the sale *545 of the house. If large numbers of persons drive to the model home in their cars, park their cars in surrounding areas, inspect the house and then drive away, it might very well be that this would disturb the rest and relaxation of others and thus be contrary to the public policy of this State.
As was said in Hertz Washmobile System v. South Orange, supra, each case in the last analysis must turn on the particular concept of evil to which the legislation was addressed, the classification, measured in the light of the evil, and the factual record before the court. The failure of contiguous communities to adopt similar ordinances, or the fact that the defendant may because of the ordinance suffer curtailment of profits or even financial loss, does not militate against the validity of the ordinance.
It was stated in Gundaker Central Motors v. Gassert, supra, that the public policy of the State is against all worldly employment on Sunday except works of charity and necessity. The means selected for accomplishing and maintaining that policy is not for the court to question so long as there is any reasonable basis for the enactment.
The State, and municipalities by delegation within the limits of the state statute, have power in the interests of the common good to enact all manner of laws reasonably designed for the protection of the public health, welfare, safety and morals, and, although the exercise of such power may cause individual hardship or even limit the freedom of individual action, this does not nullify the law so long as there is some degree of reasonable necessity to protect the legitimate interests of the public and the regulation resulting from the use of the power is not arbitrary or oppressive. The greater good for the greater number of people must prevail and individual inconveniences, if suffered, are the price paid for living in a well-ordered society. Gundaker Central Motors v. Gassert, supra. See also, Schmidt v. Board of Adjustment, Newark, 9 N.J. 405 (1952); Nebbia v. People of the State of New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934).
*546 Viewed in the light of the above authorities, the ordinance in question is a proper exercise of the power of the Town of West Orange to protect the public health, welfare and safety of its inhabitants and the ordinance is within the permissive limits of N.J.S. 2A:171-1 et seq.
While under the facts of this case the defendant, by its officers and employees, can hardly be said to have been engaged on June 15, 1958 in a work of necessity, it is not necessary to make such a finding of fact here, in view of the conclusion reached.

III.

SHOULD THE MAGISTRATE HAVE RECEIVED THE TESTIMONY OF THE TOWN COMMISSIONERS AS TO THE PURPOSE OF THE ORDINANCE?
The appellant assigns as error the refusal of the magistrate to accept evidence that four of the town commissioners would testify that it was not their intent in passing the ordinance to include within its prohibition the inspection of homes on Sunday.
It has been held in this State that the imputed intent of any single member or even a minority block of the Legislature has no significance in judicial construction. Flagg v. Johansen, 124 N.J.L. 456 (Sup. Ct. 1940); Keyport & M.P. Steamboat Co. v. Farmers' Transportation Co., 18 N.J. Eq. 13 (Ch. 1866); In re Hudson County, 106 N.J.L. 62 (E. & A. 1928).
Flagg v. Johansen, supra, was cited with approval in Bass v. Allen Home Improvement Co., 8 N.J. 219 (1951), where it was held that the testimony of a member of the Legislature as to the meaning of a bill he had introduced and sponsored was not admissible in determining the meaning of the statute.
In 50 Am. Jur., Statutes, sec. 326, p. 318, it is stated that the testimony of a member of the Legislature as to the intention of the Legislature in enacting a statute may not *547 be given consideration. See also, Deaney v. Linen Thread Co., 19 N.J. 578 (1955); State v. Sperry & Hutchinson Co., 23 N.J. 38 (1956); Glover v. Simmons Co., 17 N.J. 313 (1955).
The exclusion of this evidence by the magistrate was proper.

IV.

CAN THE CONVICTION BE SUSTAINED?
Proceedings such as the present one have been held to be criminal in nature, thereby requiring the State or municipality to prove its case beyond a reasonable doubt. State v. Yaccarino, 3 N.J. 291 (1949); City of Newark v. Pulverman, 12 N.J. 105 (1953); City of Plainfield v. Phillips, 38 N.J. Super. 260 (App. Div. 1955).
The ordinance in question in its enacting clause proscribes all worldly employment or business "except works of necessity and charity." Thus, the burden is placed on the town to negative in its complaint and show by its proof that the work complained of as being done by the defendant was not one of necessity or charity.
The rule, that where the exception is in the enacting clause of the statute or ordinance it must be negatived in the complaint, indictment or declaration and by the proof, is one of long standing in this State. The leading case now is State v. Reilly, 88 N.J.L. 104 (Sup. Ct. 1915), affirmed 89 N.J.L. 627 (E. & A. 1916), where the court cited with approval McGear et al. v. Woodruff, 33 N.J.L. 213 (Sup. Ct. 1868), and quoted as follows from that case:
"In an action founded on a penal statute the subject of any exception in the enacting or prohibitory clause of the act must, in the declaration, be excluded by averment; but of any proviso or qualification in a separate substantive clause, the declaration need not take notice. In the first case, the exception is an essential part of the description of the offense or thing prohibited; in the latter, the proviso, etc., is only a distinct matter of defense."
*548 The court then went on to state, 88 N.J.L. at page 106:
"* * * Strictly speaking, the enacting part of a statute is that which declares its enactment and identifies it as an act of legislation, which is no part of the prohibitory or declaratory clause of the act. If the exception appear in the latter, it is an essential part of the description of the thing prohibited, and must be negatived. * * *"
The court quoted with approval the following language from State v. Miller, 24 Conn. 522 (Sup. Ct. Err.):
"* * * Now, the claim is that, by the reference in the first section, the subsequent exceptions are incorporated into the first section, and become a part of it as effectually as if they were recited verbatim, and that they must therefore be negatived, according to the well-settled rule of declaring that an exception, contained in the enacting clause of the statute, must be negatived by the prosecutor or the pleader. As to this general rule of law, we believe there is no doubt; * * *."
If the provision is not in the enacting clause, it is enough for the prosecution to show that the defendant is within the prohibitory clause, and the burden is on the defendant to prove himself within the exception. Plainfield v. Watson, 57 N.J.L. 525 (Sup. Ct. 1895); State v. Lee, 100 N.J.L. 201 (Sup. Ct. 1924).
To the same effect is 50 Am. Jur., Sundays and Holidays, sec. 32, p. 828, where it is said:
"The settled rule that in a criminal prosecution the burden is on the state to prove beyond a reasonable doubt every element of the offense charged is applicable to prosecutions for violations of Sunday laws. In accord with the usual principle that where a negative proposition is an essential element of the crime charged, the burden is on the state to prove the charge, in prosecutions for violations of Sunday laws forbidding all work or labor on that day except in cases of necessity or charity, it is incumbent on the state to prove that the acts done were not works of necessity or charity within the exception of the statute. There is no burden on the accused to prove, even by a preponderance of the evidence, that the work done by him on Sunday was a work of `necessity or charity.' * * *"
See also, Rich v. Commonwealth, supra.
Formerly, there was a statute in force which made it unnecessary for the town in a case like this to negative the statements in the enacting clause. This statute was referred *549 to in Board of Com'rs. of City of Newark v. Inlander, 7 N.J. Super. 192 (App. Div. 1950). There, Justice (then Judge) Jacobs stated that the issue of negativing the exceptions in the enacting clause of an ordinance need not further be pursued in view of the provisions of R.S. 2:220-39. That statute, which was made expressly applicable to proceedings in municipal courts, provided that it was not necessary in any pleading to negative any exception, exemption, etc., which appeared in the statute or ordinance upon which a case was predicated. R.S. 2:220-39 was not, however, enacted when Title 2 was repealed and Title 2A substituted therefor. L. 1951, 1st Sp. Sess., c. 344, effective January 1, 1952. See Tables in Title 2A, p. 108.
It would appear from an examination of the drafts of the rules that it was intended to include this provision as Rule 8:7-5(b), but no such rule has ever been adopted, nor has any statute been enacted to replace R.S. 2:220-39. Therefore, the rule as laid down in State v. Reilly, supra, and the subsequent cases, still appears to be law in this State. These cases were cited with approval in State v. DeMeo, 35 N.J. Super. 168 (App. Div. 1955), affirmed 20 N.J. 1 (1955). See also, 153 A.L.R. 1213, 1226 et seq.
In 27 Am. Jur., Indictments and Informations, sections 106 and 107, pp. 666-668, the general rule is reiterated that, if an exception or proviso appears in the enacting clause of a statute, it must be averred in the indictment or information founded upon the statute by means of language negativing the exception and stating that the accused is not within the exception, but that exceptions or provisos contained in distinct clauses of the statute need not be negatived in such indictment, but the facts regarding the exception are properly a matter of defense to be shown by the accused, citing with approval Board of Com'rs. of City of Newark v. Inlander, supra.
Since, therefore, the exceptions in the enacting clause of the ordinance were not negatived in the complaint and no proof was introduced by the town concerning this, the conviction must be set aside, but without costs.