TURNER v. STATE.

Opinion delivered December 30, 1907.

SABBATH BREAKING—WORK OF NECESSITY.—Where the evidence showed that, while employed in work which the State admitted was necessary, defendant in addition cleaned out the four boilers of a saw mill plant on Sundays, that the boilers had to be cleaned out once a week, that if they were cleaned out on any other day of the week it would be necessary to shut down the saw mill for the day, and throw three hundred and fifty men out of employment, and that the purchase of four additional boilers, so as to obviate the necessity of shutting down one day in each week, would entail great expense, a conviction of defendant for Sabbath breaking will be set aside.

Appeal from Bradley Circuit Court; *Henry W. Wells,* Judge; reversed.

STATEMENT BY THE COURT.

Appellant was indicted for the crime of Sabbath breaking, committed by cleaning out the boilers at Arkansas Lumber Company's mill plant.

S. F. Mitchell, on behalf of the State, testified that he knew the defendant, who was a colored man, then in the court room; that defendant was a fireman at the Arkansas Lumber Company's saw mill, and worked the same on Sunday morning as he did on any other morning; that it was his duty to clean out the sediment that had collected in the boilers; that, unless this was done at regular intervals, it would destroy the boilers, by burning holes in them; that after the boilers were thus cleaned, he had to steam them up, and then start the air compressor, so as to furnish light and water to the town of Warren; that it took

about ten hours for him to accomplish this work; that there were four boilers in use at this mill, which were connected; that he had to keep steam in two of the boilers all the time; that he did this for the company every Sunday in December; that he performed this work in the county of Bradley, State of Arkansas.

On cross-examination, witness stated that he himself had experience with machinery for thirty-six years; that the defendant was employed by the Arkansas Lumber Company to clean out the four boilers mentioned; that these boilers were used by the Arkansas Lumber Company to generate steam to run its saw mill and electric light and water plants to supply light and water to the mill and its employees, and to the town of Warren. (It was afterwards admitted by the State that the Arkansas Lumber Company has, and had, at the time in question, a contract with the town of Warren to furnish water and light for the town; that this company furnished light and water, under this contract, to the town of Warren; that it was necessary to have the boilers cleaned, and fire kept in them for the purpose of producing steam to furnish lights and water on Sunday, as well as on any other day; that this could not be successfully and conthinuously done without the service so rendered by the defendant on Sunday. Witness was then asked, if these boilers had not been fired up on Sunday, could the light and water plants have been kept in operation. He answered that they could not.

On re-direct examination, witness said that he had only two of the boilers cleaned at a time; that defendant had to keep steam in two of the boilers all the time, in order to generate steam to pump the water; that they could not operate with only two boilers; that two boilers would, however, keep the electric light plant and air compressor going; that it took the four boilers to run the whole plant, and he could run only the electric light plant and air compressor with two.

On re-cross examination, witness was asked what was the necessity for keeping these boilers in condition all the time. He replied that it was necessary to keep them in condition to run the water plant during the week, and the light plant, and afterwards stated that it was likewise necessary to keep them in condition in order to run the saw mill. He was then asked why it was necessity for keeping these boilers in condition all the time. He

replied that, if they did not keep the mill running six days a week, they could not accumulate fuel enough to run the dry kiln and fire pump; "the saw mill furnishes fuel for the dry kilns, and the fire pump is connected with it. The fire mains run into the deep pool, and the fire pumps must be kept running. It is absolutely necessary that we have fuel enough. We have to run the saw mill six days in the week to do it. Under the company's insurance contracts, it is required to keep plenty of water, and the pump running; this compels them to perform some labor on Sunday." He was then asked to state what labor is necessary to be done on Sunday. He replied: "There are a good many things about a large mill that it is impossible to do anything with when the mill is running. There is parts of the machinery that you can't reach until it is shut down and cooled down. It is impossible to do anything with the belting, for instance, when the mill is running." He further stated that it takes about twelve hours, after shutting down, before the plant cools off enough to perform any labor on it satisfactorily.

Here the State rested.

C. J. Mansfield, a witness for the defendant, testified that he was secretary and general manager of the Arkansas Lumber Company, which position he had occupied for about a year and a half; that steam was generated by the boilers in question for the purpose of running the engines that pumped water and furnished lights for the use of the mill and its employees, and for the use of the town of Warren, and to run and operate the saw mill. His company had a contract with the town of Warren to furnish lights and water, which had to be furnished night and day, including Sundays; that it was necessary to keep some of these boilers in constant operation to perform the service; that there was no way to avoid the necessity for this Sunday work which was performed by defendant; that it was absolutely necessary at all time to keep up some steam to pump water and furnish lights; that the defendant was put there to do this work on Sunday, so the water and light plant could run on Sunday, and so the mill could run the rest of the week. Witness was then asked, if this work was not done on Sunday, how many people would be out of employment each Monday, or other day it was

shut down; he replied that it would put out of employment, one day each week, about three hundred and fifty men.

Witness further stated that, if the mill were not run constantly, it could not be run at a·profit, and, if this work were not done on Sunday, it would leave 350 men out of employment one day in each week, in addition to Sunday, thus leaving only five days in each week in which the mill could be run, and making the employees receive pay for only five days; that he never permitted any of his men to work on Sunday, except so long as was absolutely necessary, and in no instance did any of them work later· than the noon hour on Sunday.

On cross examination witness stated that these boilers were connected, and that the steam could be shut off from two of them at a time, by means of valves; that it required all four of the boilers to perform the services necessary to keep the mill in constant operation; that the mill could not be operated with only three boilers, as that number would not furnish sufficient steam.

Newt. Turner, the defendant, testified that he worked for the Arkansas Lumber Company every Sunday morning during the month of December, 1906, in the boiler room, firing, etc. He was then asked what was the necessity for his working on Sunday. He replied: "Had to run so they could furnish the water and lights, I suppose. I would let down two of the boilers and clean them up; then I would put water in them, and steam them up; then let down the other two and clean them up." That this was necessary to keep them in operation.

There was a verdict of guilty, and defendant has appealed.

*Purcell & Bradham* and *Austin & Danaher,* for appellant.

Under the state of facts in this case, there is no violation of the Sabbath, within the meaning and spirit of the statute. "By no ordinary discretion or reasonable expense could such labor have been avoided," and certainly it was in keeping with moral fitness and propriety that this work be done by a few on the Sabbath, both in order to enable 350 employes to work throughout the week, and to enable the company to supply the town of Warren with the public necessities, water and lights, under the contract. 61 Ark. 219; 72 Ark. 167. See also Kirby's Dig. § 2032.

*William F. Kirby,* Attorney General and *Dan'l Taylor,* assistant, for appellee.

When the State showed by proof that the defendant labored on the Sabbath, it devolved on him to show that such work was of necessity, and that burden has not been discharged. It is the duty of those engaged in any lawful enterprise to select and arrange the means and appliances incident thereto, so as not to violate the law in their practical application. The proof shows that the cleaning of the boilers at least once a week was a work known, anticipated and recognized as being necessary, and that by the provision of two additional boilers the work could be done as well on a week day as on Sunday. "One cannot negligently or wilfully create the necessity which he pleads in defense," neither can labor be lawfully performed on the Lord's day "merely for the purpose of adding profit to the accumulation of business already lucrative." 61 Ark. 216; 20 Ark. 289; 56 Ark. 124; 112 Mass. 467; 98 Mo. App. 664; 52 W. Va. 257; 10 Allen, 18; 97 Mass. 407. This case differs from the Collett case, 72 Ark. 167, where the labor performed was rendered necessary by reason of an accident which could not have been by reasonable caution guarded against, while in this case the work of cleaning the boilers was a regularly recurring necessity.

HART, J., (after stating the facts.) The principles of law involved in this case are settled by the case of *Shipley* v. *State,* 61 Ark. 216.

The difficulty in cases of this sort is a proper application of the principles. The keeping of the Sabbath as a day of rest is observed in all civilized as well as Christian countries.

The testimony shows that the boilers must be cleaned as often as once a week to keep them from burning out and to enable them to properly do the work for which they are used. It is also an undisputed fact that it takes ten or twelve hours for the boilers to cool off so that they may be cleaned. This would necessitate the closing down of the plant and the consequent throwing out of employment of three hundred and fifty men for one day in each week, or, to avoid that, the purchase of four more boilers of equal capacity, for use the day the boilers were being cleaned.

It is proved that the Arkansas Lumber Company supplied water and light, not only to its mill and to the homes of its employees, but also to the town of Warren and its inhabitants. It was also necessary to constantly keep up steam to provide for an additional supply of water in case of the emergency of a fire. It will hardly be questioned that a water company may supply water, and an electric light company light, on Sunday.

For these public purposes, it was necessary that the company should have some of its employees at work on Sunday.

Here the main object of the fireman working on Sunday was to generate steam for the legitimate purpose mentioned above. The employee in question was employed in work which falls clearly within the exception of the statute; and, while, doing this necessary work, is it a violation of the statute to require this employee to clean out the boilers on Sunday, and thereby save a working day for 350 employees and save the company from an expensive purchase of additional boilers?

The court does not think that the imposition of this additional duty upon the employee falls within the spirit of the statute, but regards it as incidental work which may lawfully be done while doing the necessary work, as a druggist in charge of a drug store may lawfully sweep out his store on Sunday.

BATTLE and WOOD, JJ., dissent.